(92 App. Div. 205.)

PEOPLE v. AMMON.

(Supreme Court, Appellate Division, First Department. March 11, 1904.)

1. RECEIVING STOLEN MONEY—FACTS CONSTITUTING.

M., who had stolen money, took it to a bank, defendant going with him, and delivered it to the receiving teller to count. While it was being counted, defendant, at the instance and with the consent of M., made out a deposit slip for the money to his own credit, which was received with the money; the money being placed to defendant's credit in the bank. *Held*, that this constituted receiving stolen money, which, being with knowledge that it was stolen, is a crime, under Pen. Code, § 550.

2. SAME—KNOWLEDGE OF THEFT—EVIDENCE.

Evidence *held* sufficient to show that defendant, in receiving stolen money, received it with knowledge that it had been stolen.

3. ACCOMPLICE TESTIMONY—CORROBORATION.

Even if one who stole money is an accomplice of defendant in the crime of receiving from him the stolen money with knowledge that it had been stolen, it is not necessary that all his testimony not corroborated be excluded in determining defendant's guilt; it being enough, under Code Cr. Proc. § 399, providing that a conviction cannot be had on the testimony of an accomplice unless he be corroborated by such other testimony as tends to connect defendant with the commission of the crime, that defendant's connection with the crime be substantially proved by independent evidence.

4. CRIMINAL LAW—INSTRUCTIONS.

Explicit instructions covering the case having been given, further requested instructions may be refused.

5. RECEIVING STOLEN MONEY—KNOWLEDGE OF THEFT—EVIDENCE.

On a prosecution for receiving stolen money from M., the question being whether defendant knew M. had stolen it, a conversation between the district attorney and defendant, who then represented himself to be M.'s counsel, concerning the whereabouts of M., who had fled, was introduced. *Held*, that the evidence was competent, and that, even if it was immaterial, this would not justify a reversal.

Appeal from Court of General Sessions, New York County.

Robert A. Ammon was convicted of receiving stolen money, and appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Arthur C. Palmer, for appellant.

Robert C. Taylor, for the People.

INGRAHAM, J. The defendant was indicted, under section 550 of the Penal Code, for receiving stolen property, to wit, $30,500, which had been stolen, or wrongfully appropriated in such a manner as to constitute larceny, by one William F. Miller from various persons. That section provides that:

"A person who buys or receives any stolen property, or any property which has been wrongfully appropriated in such a manner as to constitute larceny according to this chapter, knowing the same to have been stolen or so dealt with, or who corruptly, for any money, property, reward or promise or agreement for the same, conceals, withholds, or aids in concealing or withholding, any property, knowing the same to have been stolen, or appropriated wrongfully in such a manner as to constitute larceny under the provisions of this chapter, if such misappropriation had been committed within the state, whether such property were so stolen or misappropriated within or without the state, is guilty of criminally receiving such property."

It was proved upon the trial that Miller had organized what he called the "Franklyn Syndicate" for the purpose of inducing persons to invest money with him, to be used in speculation; agreeing to pay the depositors 10 per cent. a week for the use of the money; the depositors to have the right to withdraw the money at any time on demand. Miller was convicted of larceny, and that conviction was sustained by the Court of Appeals. People v. Miller, 169 N. Y. 339, 62 N. E. 418, 88 Am. St. Rep. 546. The opinion in that case stated the general outline of the defendant's transactions, and the scheme

that he adopted is there characterized as one "formed in order to appropriate to himself the money of the credulous and unwary," and it was there said that the "whole project, from beginning to end, was a transparent swindle." Miller, who was serving his sentence in State's Prison, was produced as a witness upon this trial, and testified to his operations; and it is only necessary to say that the evidence was amply sufficient to establish that Miller was guilty of the crime, and that the money which he received from his dupes had been wrongfully appropriated in such a manner as to constitute larceny, as defined by section 528 of the Penal Code. The question, therefore, to be determined, is whether the defendant received any of the money thus wrongfully appropriated by Miller, knowing the same to have been stolen or so dealt with.

It was proved upon the trial that Miller commenced his operations in March, and continued them until the 24th of November, when the place was closed by the police and Miller was indicted. On the 22d of November, Miller had received upwards of $30,000 from persons who had deposited money with him in accordance with the scheme that he had adopted. This money was in bank bills, and was kept by Miller at his place of business during the night of November 22d. Prior to that time Miller had consulted the defendant in relation to his scheme, and the defendant had advised him as to the method that he should adopt in order to avoid criminal responsibility. On November 23d, Miller, taking this sum of $30,500 in bills of various denominations that had been received on the day before, went with one Schlessinger, who was connected with Miller in his operations, to the defendant's office. Miller testified that, after some conversation with the defendant, Schlessinger said that the "jig was up," and the defendant, being asked what he thought, said, "Billy, I think you have to make a run for it"; that "the best thing for you to do is to go to Canada." Miller and the defendant then started together to the banking house of Wells, Fargo & Co., where Miller had an account in which there was upwards of $10,000 to his credit. He also had a certificate of deposit of Wells, Fargo & Co. for $100,-000; and Wells, Fargo & Co. held for him United States bonds that had been purchased by Miller with the proceeds of this larceny of the par value of $40,000. Before starting from the defendant's office, Miller stated to defendant that he was afraid of getting arrested with the satchel in which had been placed this sum of money, whereupon the defendant took the satchel containing the money and carried it to the banker's office. Upon his arrival at the banker's office, Miller attempted to withdraw the $100,000 represented by the certificates of deposit, but payment was refused upon the ground that it was after banking hours. The defendant and Miller had then some conversation with the cashier of the banking house, and Miller finally determined to transfer the balance of his account and the amount represented by the certificates of deposit to the defendant. In the meantime this sum of money had been taken out of the satchel and handed to the receiving teller at the banking house to be counted. After the receiving teller had counted the money and reported that there was $30,500, the defendant prepared three deposit slips—one for the cer-

tificates of deposit, one for a check of $10,000 signed by Miller to the order of the defendant upon the banking house, and one for the $30,-500 in cash—and these slips were handed to the receiving teller, with the money that had been brought to the bank by the defendant. The certificate of deposit, Miller's check, and then the money, aggregating $140,500, were placed to the defendant's credit in the bank, and subsequently drawn out by the defendant, and his account was closed. The transactions in the banking house, as here outlined, were testified to by the cashier of the banking house, and were not disputed.

The first question is whether this evidence is sufficient to sustain the finding of the jury that the defendant received this $30,500. It is claimed by the defendant that, the money having been deposited by Miller, or handed over to the banking house for the purpose of being deposited for his account, there was thereby created between the banking house and Miller the relation of debtor and creditor, and that such transfer was not a receipt of the stolen property, within the provisions of section 550 of the Penal Code; but it is entirely clear that there was no deposit of the money by Miller by which the title to the money vested in the bankers, and Miller became a creditor to the bankers for the amount. The money was delivered to the receiving teller to be counted; and, pending the counting of the money, its disposition was to be determined by Miller. He would have been entitled to receive back at any time before it was finally deposited by the defendant the identical money which was in the hands of the teller of the banking house. He never parted with his title to the money until, with his consent, it was transferred to the defendant, and by him deposited with the bankers. When the defendant made out the deposit slip which placed this money to his credit, and that slip was received by the banking house with the money, whether it was in the defendant's actual custody or not, he then received the money which prior to that time had been in possession of Miller, and appropriated it to his own use.

It is also, I think, entirely clear that, when the defendant received this money, he received it with knowledge that it had been acquired by Miller in the manner described. He had been Miller's legal adviser for some weeks before the final catastrophe. He advised with Miller as to the course to be adopted when his scheme should collapse. He went with Miller to the banking house to enable him to withdraw the amount on deposit. While there he received from Miller an amount exceeding $140,000, besides a large amount of bonds. or other securities, and then aided Miller in his escape. That the defendant had full knowledge of the situation, and the method by which Miller had obtained this money, is abundantly proved by uncontradicted evidence; and his subsequent acts in relation to this money and property received from Miller, and his failure to pay any of it either to the receiver appointed by the Supreme Court, or to the receiver in bankruptcy, as Miller's money, justifies the inference that the money was received with the intention of preventing its being applied in the discharge of Miller's obligations. And such subsequent acts are competent as characterizing the knowledge and intent with which the money or property was received. No man who had in--

nocently received a sum of money under these circumstances would have hesitated to restore the money to its lawful owners.

Another question that should be noticed is the claim by counsel for the defendant that, as Miller was an accomplice, his testimony could only be received, as against the defendant, when corroborated by independent testimony. As I understand the claim of the learned counsel for the defendant, it is that all the testimony of Miller not corroborated by independent testimony must be excluded in determining whether or not there was evidence which justified the conviction. It is doubtful whether Miller can be said to be an accomplice. The crime charged is that defendant received this money, which had been stolen by Miller, with knowledge that it had been stolen. Was Miller an accomplice in the act of the defendant in receiving this money? He was the thief who had stolen it, and he had delivered it to the defendant. It was the act of the defendant in receiving the money with a guilty knowledge that constituted the crime, and, whether he received it from the thief or from any one else, he was guilty; and I do not see how, strictly speaking, Miller, in delivering the property to the defendant, became an accomplice with the defendant in the crime which consisted in the receipt of the money.

Assuming, however, that Miller was an accomplice, it does not follow that all of Miller's testimony, except that which is corroborated, is to be disregarded in determining the question of the defendant's guilt or innocence. The section of the Code of Criminal Procedure upon which the defendant relies is section 399, which provides that:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime."

This is a very different proposition from that insisted upon by counsel for the defendant. The testimony of Miller as to the method by which he obtained this money was corroborated by some of his victims and those in his employ, and, if it was necessary to corroborate his evidence in this respect, such corroboration was ample. The crime was receiving this money, knowing it to be stolen. That the defendant received the money is clearly established by satisfactory evidence. He received it under such circumstances, and acted in relation to it in such a way, as itself would corroborate the testimony of Miller as to his knowledge of the method by which the money had been obtained; and with the further evidence that he had been Miller's legal adviser, and had been present on several occasions on the premises where the money was received, there was sufficient to corroborate Miller's testimony that the defendant had been informed by Miller of the whole scheme, and was actively aiding him in his endeavor to escape criminal responsibility for his acts. As was said in People v. O'Farrell, 175 N. Y. 323, 67 N. E. 588:

"The corroboration must be of a character and quality which tends to prove the defendant's guilt by connecting him with the crime. If there is evidence fairly tending to show such connection, so that the conviction will not rest entirely upon the evidence of the accomplice, then the question whether the evidence is a sufficient corroboration to induce the jury to find against the defendant is for them to determine."

Thus the defendant's connection with the crime was substantially proved by independent evidence, and there is no reasonable doubt of his guilt.

The only remaining question is whether there was any error committed which would require us to reverse such conviction. The court, in the charge to the jury, after reading section 550 of the Penal Code, told the jury that the questions they were to determine were (1) whether any property had been wrongfully appropriated in such a manner as to constitute larceny; (2) did the defendant receive the same knowing it to have been stolen; and (3) did he receive it with a felonious intent? The jury, at the request of the defendant, were specifically instructed that, before they could convict the defendant, they must find that the said sum of $30,500 was stolen by William F. Miller; second, that the sum of $30,500 so stolen by William F. Miller was received by the defendant; and, third, that, at the time the defendant received the said sum of $30,500, he actually took it into his possession for the purpose of claiming ownership in the identical money which had been stolen by said Miller; fourth, that at the time he received the identical money, the proceeds of the larceny committed by said Miller, the defendant knew that the said money had been stolen. This certainly was as specific and as favorable to the defendant as was justified, and the subsequent requests to charge, which the court refused in the language requested, even though some of those requests contained correct legal propositions, in view of this explicit instruction, were not improperly refused. A judge is not bound to reiterate instructions to the jury that he has distinctly given. The court, also, at the request of the defendant, expressly charged that the various other acts of the defendant which had been testified to, such as the advice that it was alleged he had given Miller, and the receipt by the defendant of the other sums of money, or the use that the defendant made of this money after he had received it, would not justify the conviction of the defendant. Taking the charge as a whole, with the requests made by the defendant which the court charged, the case was presented to the jury in a way that insured to the defendant all of the rights which the law gave him; and, in view of the instructions given, it is clear that the jury expressly found from the evidence, which, we think, clearly justified their finding, that the essential acts required by the statute to constitute the crime were proved, and that the defendant was guilty.

There are scattered through this record many exceptions to evidence, some of which are relied upon by the defendant. They have all been examined, but there are none, we think, that would justify a reversal of the judgment. The testimony that was given by Mr. Clarke, the district attorney of Kings county, who conducted the prosecution against Miller, consisted entirely of a conversation that he had with the defendant after Miller's escape, and before he returned. The defendant at that time represented himself to the district attorney as Miller's counsel, and the discussion was in relation to Miller's whereabouts, with an intimation from Mr. Clarke to the defendant that the defendant might be considered as an accomplice. I do not think that this testimony can be said to be incompetent.

The question that the jury had to determine was as to the defendant's knowledge of the methods by which Miller had obtained this money which he had turned over to the defendant. Any declarations or admissions of the defendant in relation to Miller's methods by which he obtained the money were competent evidence as to that knowledge, and, although this conversation may have had but slight relevancy upon this question, it was not, I think, incompetent. As the testimony was of a conversation with the defendant, the only objection to it would be that it was immaterial. It would not justify us in reversing the judgment. I do not consider it necessary to discuss the other exceptions to rulings upon the admission or rejection of evidence, as I am satisfied that none of the rulings about which there is a question could possibly have injuriously affected the defendant.

I have thus stated the reasons which have satisfied us that this conviction should be sustained, without specifically answering all of the objections of counsel for the defendant. The size of this record and the length of the defendant's argument would preclude an answer to all the arguments submitted by the defendant, within the reasonable limitation of an opinion. We think, however, enough has been said to indicate our views upon the main questions presented; and as, upon the whole case, we are satisfied that no error was committed which would justify a reversal of the conviction, it follows that the judgment appealed from must be affirmed.

VAN BRUNT, P. J., and PATTERSON and LAUGHLIN, JJ., concur. HATCH, J., concurs in result.